UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PETER A. FROST, on behalf of himself and others similarly situated,

                          Plaintiff,

-against-

THE COLLISION CENTERS OF NEW YORK, INC. and JOSEPH AMODEI,

                          Defendants.
------------------------------------------------------------------------X

Civil Action No.:

**FLSA COLLECTIVE AND RULE 23 CLASS ACTION COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff, PETER A. FROST ("Plaintiff"), on behalf of himself and others similarly situated, by his attorneys, Law Offices of Yale Pollack, P.C., as and for his Complaint against Defendants, THE COLLISION CENTERS OF NEW YORK, INC. and JOSEPH AMODEI (collectively "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action, on behalf of himself and other current and former employees similarly situated, to remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.* (the "FLSA"). Plaintiff seeks, for himself and other similarly situated employees, unpaid wages, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§216(b) and 217, and other applicable federal law.

2. Plaintiff also brings this action, on behalf of himself and other similarly situated employees, to remedy violations of New York State Labor Law, including New York Labor Law §§190 *et seq.*, §§650 *et seq.* (the "NYLL"), and 12 N.Y.C.R.R. §146. Plaintiff seeks, for himself and all other similarly situated employees, unpaid wages, pre- and post- judgment interest,

reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief, pursuant to NYLL §§193, 195, 198, 215, and 663.

3. Defendants have engaged in a policy and practice of requiring Plaintiff and others similarly situated to regularly work without being paid minimum and overtime wages as required by applicable federal and state law for work with after-market parts, side work, mandatory meetings, and trainings that was not accounted for in the payment system maintained by Defendants to pay Plaintiff a "commission" as an auto body technician.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court over Plaintiff's FLSA claims is invoked pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

5. Jurisdiction of this Court over Plaintiff's NYLL claims is invoked pursuant to 28 U.S.C. §1367(a) as the NYLL claims are so related to Plaintiff's FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

6. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Eastern District and the residence of Defendants is within the Eastern District.

## PARTIES

7. Plaintiff is an individual who resides in the County of Suffolk, State of New York.

8. At all times herein mentioned, Plaintiff was employed by Defendants, where he worked as an auto body technician from August 2013 until February 2015, and from about December 2015 until his termination on April 12, 2017.

9. Upon information and belief, Defendant The Collision Centers of New York, Inc. ("Collision") is a domestic corporation authorized to do business in the State of New York, with

its principal place of business located at 225 Route 112, Patchogue, New York.

10. Upon information and belief, Collision was formerly known as The Collision Centers of Patchogue Inc. and 112 Automotive Center Inc.

11. Upon information and belief, Collision operates an auto body shop for the repair of vehicles.

12. Upon information and belief, Collision is not primarily engaged in the business of selling such vehicles or implements to ultimate purchasers.

13. Upon information and belief, Defendant Joseph Amodei ("Amodei") is the owner, officer and principal of Collision.

14. Upon information and belief, in addition to Collision, Amodei is also the owner, officer and principal of The Collision Centers of Babylon Inc., The Collision Centers of Huntington Inc., The Collision Centers of Medford Inc., The Collision Centers of Northport Inc., and The Collision Centers of Port Jefferson Inc.

15. At all relevant time mentioned herein, Amodei had the power to hire, fire, and control the wages and working conditions of Plaintiff, the FLSA Collective Plaintiffs (as defined herein) and the Class Members (as defined herein).

16. Amodei had authority to, and did in fact, exercise operational control over Collision.

17. Amodei set the manner by which Plaintiff, the FLSA Collective Plaintiffs and the Class Members were to be paid while employed by Collision

18. At all times relevant, Defendants were covered by the FLSA and the NYLL.

19. Defendants maintained a common policy and practice of, *inter alia*, not paying employees for all hours worked during their employment or otherwise notifying them of their

rights under the law.

20. At all relevant times, Defendants affected commerce within the meaning of 29 U.S.C. §203(b) by producing goods for interstate commerce, or handling, selling, or working on goods or materials that have been moved in or produced for interstate commerce.

21. Upon information and belief, the gross annual volume of sales made or business done by Defendants was not less than $500,000.

22. At all relevant times, Defendants were Plaintiff's employers, as well as the employers of FLSA Collective Plaintiffs and the Class Members, within the meaning of the FLSA and the NYLL.

## **FACTUAL ALLEGATIONS**

23. Plaintiff worked for Collision from August 2013 through February 2015, and then again from December 2015 until April 2017.

**A.** **Class Allegations**

24. During his employment, Plaintiff was paid a "commission" for his services, which was based on fictitious hourly wage measured by an insurance company's designation of time that should be spent to complete a task, and then divided by the technicians based on their designated percentage.

25. During Plaintiff's employment, Defendants would change the designated percentage to technicians without advance notice to the technician.

26. The commissions paid by Defendants were based on approved tasks by the insurance companies for work to be performed on automobiles.

27. In addition to working on automobiles on tasks approved by the insurance companies, Plaintiff performed additional work for which he was not compensated.

28. Work that Plaintiff performed for which he was not compensated included, but is not limited to: (a) fixing automobiles designated as "come backs," which are automobiles with problems that were not originally fixed by the teams or technicians assigned to the automobile; (b) "throw ins," which were repairs to automobiles that were not part of the initial loss of damage and, thus, not contemplated in the insurance company's scheme; (c) cleaning and wrapping store parts from automobiles; (d) cleaning up the shop; (e) moving automobiles and parts around the shop to be worked on; (f) removing personal items from the automobiles; and (g) snow removal.

29. Defendants would also use after-market parts on the automobiles they repaired, instead of original equipment manufactured parts.

30. The after-market parts were based on molds that were from the original manufacturer but were worn due to overusage so that the alignments would not be correct if placed into an automobile.

31. The after-market parts are cheaper than using the original equipment but take longer to install due to the faulty alignment.

32. When Plaintiff worked with after-market parts, he was not paid for the full time it took to fit the part into the automobile work because they were not part of the insurance company's pay system, which was based on the time it took to install original equipment manufactured parts. Thus, no time was allotted for the necessary adjustments to make the part properly fit.

33. Plaintiff was also required to attend mandatory meetings each morning and training required by Collision both at and away from the shop, for which he received no compensation.

34. When Plaintiff inquired about receiving compensation for the side work, after-market parts work, and trainings he attended, Defendants response was simply that it was "that is the cost of doing business."

35. During his employment, Plaintiff worked approximately fifty hours per week for Defendants.

36. Of the hours Plaintiff worked, only about thirty-five to forty hours per week were for the actual repair of automobiles on tasks approved by the insurance companies, i.e. compensable time.

37. Upon information and belief, the failure to pay wages for tasks as set forth in Paragraph 28, after-market parts work, meetings, and trainings to employees extended to putative class members.

38. Defendants failed to provide notice to employees regarding their rights under the FLSA or the NYLL.

39. On the grounds of equitable tolling, the statute of limitations for all claims asserted by Plaintiff and the putative class members should be tolled due to the failure to provide appropriate and required notice of the law.

**B.    Individual Allegations**

40. In or about November 2016, there was an incident that occurred while Plaintiff was working on a repair of a Volkswagen Passat (the "Passat").

41. The Passat needed work done that – according to the manufacturer – required removal of the seats, dashboard, wiring, firewall insulation and carpet.

42. The original technician assigned to the Passat only removed the outside dashboard pad because he believed that was all that needed to be taken out; he claimed that the rest of what the manufacturer required was too much work.

43. Plaintiff advised his manager that additional parts needed to be taken out of the Passat, but he was rebuffed and told that it would be fine.

44. The manager even told Plaintiff that he should just squirt the area on the Passat with water despite the fact that Plaintiff was working with a high voltage welding machine.

45. Plaintiff refused to spray the Passat with water, so he would not be electrocuted.

46. While working on the Passat after receiving instructions from his manager, the car caught fire, which began to spread quickly.

47. Plaintiff immediately went to the nearest fire extinguisher in the shop to put out the fire on the Passat, but the extinguisher he pulled was empty.

48. Plaintiff then went to the next closest extinguisher, only to discover that the pin was bonded shut with a piece of wire.

49. Luckily, another technician saw the fire and came running across the shop with a working fire extinguisher to put the fire out.

50. As a result of the fire, the Passat was severely damaged and needed extensively more work than what it originally came in for to be repaired.

51. Geico, which was, upon information and belief, the insurer of the Passat, was notified of the incident and told that the wiring harness had to be repaired or replaced by original equipment manufacturer requirements.

52. Instead of advising the owner of the Passat of what transpired, Collision and Geico decided to attempt to repair the car, even though it should have been considered a total loss.

53. The damaged harness of the Passat was then sent out of state for the repair, and the owner of the car was told that the parts were on back order and that was the reason for the delay.

54. The owner received the Passat back and is now driving it without knowledge of the fire that occurred while it was in the shop.

55. After the fire, Collision deducted percentage points off of Plaintiff's pay, reducing

his rate from 35% to 28%.

56. Then, on April 12, 2017, Plaintiff was presented with a letter from Collision asking him to agree to a further $25 per week deduction from his pay until the amount of $3,377.18 was paid back to Collision due to the damaged caused by the fire.

57. When Plaintiff refused to sign the letter, Defendants terminated his employment.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff brings Counts One and Two as a collective action pursuant to Section 216(b) of the FLSA, on behalf of himself and others similarly situated (the "FLSA Collective Plaintiffs"), which shall include:

> All persons who work or worked for Defendants as an auto body technician from three (3) years prior to the filing of the original Complaint in this action through the date the Court orders notice to be sent in accordance with Section 216(b) of the FLSA (the "FLSA Collective Period").

59. At all relevant times, Plaintiff and the FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements, job duties and pay provisions, and are and have been subject to Defendants' decision, policy, plan, practice, procedure, routine, and rules to willfully fail and refuse to pay them the legally required minimum wage and overtime wage for all hours worked.

60. Other similarly situated employees to Plaintiff who were or are employed by Defendants should have the opportunity to have their claims for violations of the FLSA heard. Certifying this action as a collective action under the FLSA will provide other auto body technicians who worked for Defendants to receive notice of the action and allow them to opt-in to such an action if they so choose.

61. Count One is properly brought under and maintained as an opt-in collective action

8

pursuant to Section 216(b) of the FLSA. The FLSA Collective Plaintiffs are readily ascertainable from records that Defendants are required by law to maintain. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Section 216(b) of the FLSA.

## RULE 23 CLASS ALLEGATIONS

62. Plaintiff brings Counts Three, Four and Five as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class (the "Class Members"), consisting of:

> All persons who work or worked for Defendants as an auto body technician from six (6) years prior to the filing of the original Complaint in this action through the date the Court certifies the class (the "Class Period").

63. The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such employees is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are believed to be at least forty (40) Class Members during the Class Period. There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members. The claims of Plaintiff are typical of the claims of the Class Members.

64. Plaintiff will fairly and adequately protect the interests of the Class Members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against defendants.

65. There are questions of law and fact common to the Class Members which predominate over any questions solely affecting individual Class Members, including whether

Defendants failed to pay Plaintiff and Class Members minimum and overtime wages for all hours worked.

## COUNT ONE
### (Failure to Pay Minimum Wages – FLSA, Brought by Plaintiff on Behalf of Himself and the FLSA Collective Plaintiffs)

66. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

67. Throughout the FLSA Collective Period, Plaintiff and the FLSA Collective Plaintiff worked without receiving wages for all hours worked for Defendants, including, but not limited to, tasks as set forth in Paragraph 28, after-market parts work, meetings, and trainings.

68. At all times relevant hereto, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff and the FLSA Collective Plaintiffs the required minimum wages for all hours worked up to forty (40) hours per workweek.

69. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages for unpaid compensation, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT TWO
### (Failure to Pay Overtime Wages – FLSA, Brought by Plaintiff on Behalf of Himself and the FLSA Collective Plaintiffs)

70. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

71. Throughout the FLSA Collective Period, Plaintiff and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek and performed work for which they received no compensation, but not limited to, work performed on automobiles that

were sent back to Defendants, work with after-market parts, side-work, trainings, and mandatory meetings.

72. At all times relevant hereto, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff and the FLSA Collective Plaintiffs the required overtime premium rates for all hours worked in excess of forty (40) hours per workweek and for off the clock work.

73. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages for unpaid compensation, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT THREE
### (Failure to Pay Minimum Wages – NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)

74. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

75. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without being paid for all hours worked.

76. Throughout the Class Period, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff and Class Members wages for all hours worked including, but not limited to, tasks as set forth in Paragraph 28, after-market parts work, meetings, and trainings.

77. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

78. Plaintiff, on behalf of herself and the Class Members, seek damages for unpaid wages, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs,

and such other legal and equitable relief as this Court deems just and proper.

## COUNT FOUR
### (Failure to Pay Overtime Wages – NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)

79. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

80. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without being paid for all hours worked or overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

81. Defendants failed to pay Plaintiff and the Class Members overtime at the rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours in a workweek.

82. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

83. Plaintiff, on behalf of himself and the Class Members, seek damages for unpaid wages, overtime compensation, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT FIVE
### (Notice Violations and Wage Statement Violations – NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)

84. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

85. Defendants willfully failed to supply Plaintiff and the Class Members with notices

as required by NYLL §195(1) containing Plaintiff's rate or rates of pay and basis thereof; whether paid by the hours, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

86. Defendants willfully failed to supply Plaintiff and the Class Members with notices as required by NYLL §195(3) containing the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

87. Based on Defendants' violations of the NYLL §195(1), Plaintiff and the Class Members are entitled to recover from Defendants up to $5,000 each, pursuant to NYLL §198(1-b), as well as reasonable attorneys' fees and costs.

88. Based on Defendants' violations of the NYLL §195(3), Plaintiff and the Class Members are entitled to recover from Defendants up to $5,000 each, pursuant to NYLL §198(1-d), as well as reasonable attorneys' fees and costs.

## COUNT SIX
### (Retaliation – NYLL)

89. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

90. Pursuant to NYLL § 215(1)(a), "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company shall discharge, penalize, or in any other manner discriminate or retaliate against any employee because (i) because such

employee has made a complaint to his or her employer…that the employer has violated any provision of this chapter…"

91. Defendants violated the NYLL by reducing his pay after the fire with the Passat and then terminating Plaintiff's employment when he refused to consent to unlawful deductions being take from his pay.

92. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer monetary damages, including, but not limited to, a loss of income, including past salary and future salary.

93. As a direct and proximate consequence of Defendants' intentional, unlawful, and continues to suffer, non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.

94. By the foregoing reasons, Plaintiff seeks equitable relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, and behalf of himself, the FLSA Collective Plaintiffs, and the Class Members, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and authorizing prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all FLSA Collective Plaintiffs, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

  B. Certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure for applicable claims under the NYLL;

  C. Awarding Plaintiff, similarly situated co-workers and putative class members damages for the amount of unpaid wages under the FLSA and/or the NYLL;

  D. Awarding Plaintiff, similarly situated co-workers and putative class members liquidated damages in an amount equal to wages owed pursuant to 29 U.S.C. §216(b) and liquidated damages and other statutory remedies pursuant to the NYLL;

  E. Awarding pre- and post-judgment interest as permitted under the law;

  F. Awarding the costs of this action together with reasonable attorneys' fees; and

  G. Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and the Class Members, demands a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: March 14, 2018
   Syosset, New York

            Respectfully submitted,
            **LAW OFFICES OF YALE POLLACK, P.C.**

            By: _/s/ Yale Pollack_____
              Yale Pollack, Esq.
            *Attorneys for Plaintiff, the FLSA Collective Plaintiffs*
              *and the Class Members*
            66 Split Rock Road
            Syosset, New York 11791
            (516) 634-6340 Phone
            (516) 634-6341 Fax
            ypollack@yalepollacklaw.com